UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AZAD RAHMANI,<br><br>      Petitioner(s),<br><br> v.<br><br>PAMELA BONDI, et al.,<br><br>      Respondent(s). | CASE NO. C26-362-KKE<br><br>ORDER ON HABEAS PETITION |

   Petitioner Azad Rahmani, a citizen and national of Iran, filed a petition for a writ of habeas corpus challenging his detention at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 5; *see* 28 U.S.C. § 2241. Petitioner has been detained since July 2025, when he was taken into custody by U.S. Customs and Border Patrol ("CBP") after approaching the United States border in Blaine, Washington, intending to cross into Canada. Petitioner claims, among other things, that his prolonged detention without a bond hearing violates his due process rights. Because Petitioner has already been detained for over seven months under conditions similar to a prison and has many months—if not years—left before there is any possibility of release or removal, the Court will grant his petition and order Respondents to give him a bond hearing within fourteen days. The Court will also enjoin Respondents from removing him to a third country without providing notice and an opportunity for Petitioner to be heard in response.

## I. BACKGROUND

Petitioner is a citizen of Iran and an ethnic Kurd who fled his home country in 2023 after being beaten, imprisoned, interrogated, and threatened by Iranian officials over his participation in political protests. Dkt. No. 5 at 5–7. He fears that if he returns to Iran, Iranian security forces will arrest him and subject him to violence, as they have in the past. *Id.* at 5. In 2019, Petitioner alleges he was arrested, detained for seven days, and beaten by the authorities after joining demonstrations protesting high prices. *Id.* at 6–7. According to his petition, Petitioner also "received threats against his family" over his participation in these protests. *Id.* at 7. In 2022, Petitioner participated in demonstrations again, this time joining "many other Kurds as they protested the detention and death of Mahsa Amini[,]" who was killed by Iranian officials after allegedly wearing a hijab improperly. *Id*

Fearing retaliation from the government and having sustained injuries during the protests, Petitioner fled Iran for Brazil with a humanitarian visa. *Id.* The Brazilian government, however, never offered him permanent status. *Id.* Eventually, Petitioner joined a group heading north and they travelled through South and Central America before reaching the United States border with Mexico. *Id.* On September 15, 2023, Petitioner crossed the border without inspection near San Ysidro, California and waited for CBP to apprehend him. *Id.*; Dkt. No. 9 ¶ 4. After about five days in immigration custody, Petitioner was released on bond while he pursued a claim for asylum and withholding of removal under the Convention Against Torture. Dkt. No. 5 at 7, Dkt. No. 9 ¶ 10.

In late September 2023, the Department of Homeland Security served Petitioner with a notice to appear, charging him as removable under the Immigration and Nationality Act ("INA"). Dkt. No. 9 ¶ 5, Dkt. No. 10-1. Petitioner appeared in immigration court several times between late 2023 and early 2025. Dkt. No. 9 ¶¶ 6–12. But on July 15, 2025, Petitioner skipped his removal

hearing, fearing he would be detained and removed to Iran; and an immigration judge ("IJ") ordered him removed *in absentia*. Dkt. No. 5 at 5, Dkt. No. 9 ¶ 13, Dkt. No. 10-3.

The day after the hearing, a CBP officer observed Petitioner pacing in the parking lot near the Peace Arch State Park in Blaine, Washington, which abuts the border to Canada. Dkt. No. 10-2 at 4. The officer approached Petitioner and, suspecting he intended to cross into Canada without inspection, questioned him about his immigration status, ultimately discovering Petitioner's removal order from the day before. *Id.* The officer arrested Petitioner, who was then transferred to NWIPC where he has been detained ever since. *Id.*; Dkt. No. 5 at 5.

On October 9, 2025, Petitioner filed a motion to reopen his removal proceedings with the immigration court but did not pay the filing fee. Dkt. No. 9 ¶ 16. Later that month, Petitioner filed a motion for a fee waiver (along with another motion to reopen), which an IJ subsequently rejected. *Id.* ¶¶ 17–18. Petitioner then paid the filing fee and again moved to reopen removal proceedings. *Id.* ¶ 18. After briefing, an IJ denied the motion to reopen on November 10, 2025. *Id.* ¶ 19–20. A month later, Petitioner appealed to the Board of Immigration Appeals ("BIA"). *Id.* ¶¶ 22, 26. That appeal remains pending.

According to Respondents, Immigration and Customs Enforcement ("ICE") has submitted a travel document request to Iran, which is "pending." *Id.* ¶¶ 22, 27. In December 2025, the Iranian Embassy interviewed Petitioner by phone. *Id.* ¶¶ 24–25.

## II. ANALYSIS

### A. Statutory Framework and Legal Standards

In arguing that his detention has become unlawfully prolonged, Petitioner initially assumed he is detained under 8 U.S.C. § 1231(a), which governs the detention of noncitizens subject to a final order of removal. *See* Dkt. No. 5 at 23. In their return, however, Respondents contended that Petitioner's removal order is *not* final and that he is therefore detained under 8 U.S.C. § 1225(b),

which governs the detention of certain noncitizens *not* subject to final removal orders. Dkt. No. 8 at 1–2. In particular, because Petitioner was ordered removed *in absentia*, Respondents observe that his removal order will not become final until the BIA adjudicates his appeal of the IJ's order denying his motion to reopen, and the Ninth Circuit resolves any subsequent appeal. *Id.* at 5–7; *see also Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021) (holding that an *in absentia* removal order becomes final upon the expiration of the time to file a motion to reopen or upon a decision by the BIA denying such a motion or affirming the removal order). According to Respondents, Petitioner is therefore detained under § 1225(b), which requires "mandatory detention" without any time limit. Dkt. No. 8 at 6.

In his traverse, Petitioner assumes Respondents are correct that he is detained under § 1225(b). Dkt. No. 13 at 1. But he argues his detention has nonetheless become unconstitutionally prolonged and that he is entitled to a bond hearing at which the government will bear the burden of showing by clear and convincing evidence that he is either a flight risk or a danger to the community. *Id.* at 1–2. Given the parties' agreement (albeit, a conditional agreement) about the governing statute, the Court assumes without deciding, for purposes of this petition, that Petitioner is detained under 8 U.S.C. § 1225(b).

**B.   The *Banda* Factors**

The legal history and caselaw bearing on the indefinite detention of noncitizens under various immigration statutes is amply set out in numerous decisions from this District. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1113–17 (W.D. Wash. 2019); *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *2–4 (W.D. Wash. Aug. 7, 2025); *Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *2–4 (W.D. Wash. Dec. 5, 2025). As relevant here, 8 U.S.C. § 1225(b) mandates that noncitizens who are detained under that statute be detained for the entirety of the noncitizen's removal proceedings or any other applicable proceedings. *Jennings*

ORDER ON HABEAS PETITION - 4

*v. Rodriguez*, 583 U.S. 281, 302 (2018). The statute imposes no "'limit on the length of detention' pending a decision" and does not "authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 297)).

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention under § 1225(b). *See Banda*, 385 F. Supp. 3d at 1113. However, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat*, 2025 WL 2256711, at *3 (quoting *Banda*, 385 F. Supp. 3d at 1116).

Courts in this District have uniformly applied the so-called "*Banda* test" to evaluate the constitutionality of prolonged detention without a bond hearing under 8 U.S.C. § 1225(b). In *Banda*, the court declined to apply the procedural due process test from *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), explaining that the *Mathews* test focuses on "whether the administrative procedures provided … are constitutionally sufficient" and not "the more fundamental issue of whether *any* procedure—such as a bond hearing—must be provided." 385 F. Supp. 3d at 1106–07 (emphasis added). Instead, the court in *Banda* conducted a case-specific analysis that considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)). This multi-factor test has become the standard in this District for analyzing challenges to prolonged detention under § 1225(b). *See, e.g., Mohamed v. Immigr. & Customs Enf't Field Off. Dir. & Facility Admin.*, No. 2:26-CV-00181-TL, 2026 WL 497096, at *3 (W.D. Wash. Feb. 23, 2026) (citing

ORDER ON HABEAS PETITION - 5

cases); *Nguyen v. Scott*, No. C25-1988-SKV, 2026 WL 194232, at *3 (W.D. Wash. Jan. 26, 2026); *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-CV-01807-KKE-GJL, 2026 WL 288378, at *3–4 (W.D. Wash. Jan. 15, 2026), *R. & R. adopted*, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026).

In other cases of this type, Respondents have acknowledged the *Banda* test and applied its factors accordingly. *See, e.g., Toktosunov*, 2025 WL 3492858, at *4; *Mohamed*, 2026 WL 497096, at *3. Here, however, Respondents identify § 1225(b) as the basis for detention and acknowledge Petitioner's claim that his detention has become unlawfully prolonged—precisely the context in which *Banda* applies—yet fail to address the factors. *See* Dkt. No. 8 at 1, 5. Petitioner's traverse accepts Respondents' premise that he is detained under § 1225(b) and, thus, analyzes the *Banda* factors. Dkt. No. 13 at 2–7. Consistent with this District's now extensive caselaw on this issue, the Court will apply the *Banda* test to determine if Petitioner's detention without a bond hearing violates the Constitution.

   1. <u>Total Length of Detention</u>

Beginning with the first and "most important factor" under the *Banda* test, the Court considers the total length of Petitioner's detention to date. 385 F. Supp. 3d at 1118. "The longer mandatory detention continues … the harder it is to justify." *Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *R. & R. adopted*, 2022 WL 16553176 (Oct. 31, 2022).

Here, Petitioner has been detained for nearly eight months as of the date of this order. Considering decisions from this District in which the length of detention has been found to favor the petitioner's claim, nearly eight months is on the shorter end of the spectrum. *See Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *R. & R. adopted,* 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (11-month detention weighed in favor of granting bond hearing); *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF,

2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *R. & R. adopted sub nom. Anisur R. v. Garland*, 2025 WL 1919252 (July 11, 2025) ("almost" 12 months); *Banda*, 385 F. Supp. 3d at 1118–19 (17-month detention "strongly favor[ed]" a bond hearing).

Other courts in this Circuit, however, as well as decisions from the Southern District of New York on which *Banda* relied, have found comparable—and even shorter—periods of detention to suggest a due process violation. *See Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (finding detention for "nearly nine months" favored a bond hearing); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("more than nine months"); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (same); *see also Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months")[1]; *Amado v. U.S. Dep't of Just.*, No. 25CV2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.") (citing cases). And cases in which this factor has been neutral have involved shorter periods of detention. *See Odimara v. Bostock*, No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) (finding length of detention neutral or "slightly in favor of granting a bond hearing" where petitioner had been detained "approximately six months").

Accordingly, the Court finds that the first *Banda* factor weighs in favor of granting a bond hearing.

---

[1] While *Cabral* involved a claim of unlawfully prolonged detention under 8 U.S.C. § 1226(c), rather than § 1225(b), courts in this District apply nearly identical tests to both types of claims—§ 1226(c) cases simply involve two additional factors. *See Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *9 (W.D. Wash. May 23, 2019), *R. & R. adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (listing *Banda* factors plus two more). "[T]he analysis under each factor is the same regardless of whether it is in the context of the six-factor *Banda* test or all eight *Martinez* factors." *Hong v. Mayorkas*, No. 20-CV-01784-LK, 2022 WL 1078627, at *4 n.3 (W.D. Wash. Apr. 11, 2022).

ORDER ON HABEAS PETITION - 7

2. Likely Duration of Future Detention

The second *Banda* factor looks to "how long the detention is likely to continue absent judicial intervention[,]" including the "anticipated duration of all removal proceedings" and "administrative and judicial appeals." 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859). Here, Petitioner's appeal of the order denying his motion to reopen removal proceedings has been pending with the BIA since December 2025. Dkt. No. 9 ¶ 21. "Courts in this District have observed that BIA appeals can take over six months." *Joshi v. Wamsley*, No. 2:26-CV-00148-TLF, 2026 WL 456822, at *5 (W.D. Wash. Feb. 18, 2026); *see also Toktosunov*, 2025 WL 3492858, at *5 ("BIA appeals take over six months."). A subsequent appeal as of right to the Ninth Circuit would likely take "approximately 6 to 12 months from the date of the notice of appeal to oral argument" and, on average, another "three months to a year" from that time "for the Court of Appeals to decide the case" according to the Ninth Circuit's website. *Joshi*, 2026 WL 456822, at *5 (quoting U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited March 4, 2026)). In sum, while the Court cannot anticipate definitively the remaining duration of Petitioner's appeal process, it appears likely, based on the current record, that he will remain in detention without a final order of removal for many more months and potentially over a year.

Assuming his removal order becomes final, Petitioner's path to actually being removed is even murkier. Petitioner has submitted an ICE memorandum from November 2024 indicating that Iran is one of just fifteen countries ICE deems "uncooperative" based on factors that include, among other things, the country's refusal to "accept charter removal missions[,]" "issu[e] travel documents in a timely manner," or "accept[] the physical return of [its] nationals by scheduled commercial or charter flights consistent with" applicable guidelines. Dkt. No. 5-1 at 8, n.4. While Respondents submit that the Iranian Embassy has apparently conducted an interview with

ORDER ON HABEAS PETITION - 8

Petitioner (Dkt. No. 9 ¶¶ 24–25), they do not suggest Iran has become any more cooperative in facilitating the removal of its citizens from the United States. Indeed, at least one other court has observed that "the recent escalation in the armed conflict with Iran" makes it "even less likely" as "a practical matter" that Petitioner's "removal to Iran could be accomplished in the reasonably foreseeable future." *Sayadi-Takhtehkar v. Bondi*, No. 1:26-CV-00152-JLT-HBK (HC), 2026 WL 608118, at *5 (E.D. Cal. Mar. 4, 2026).

Accordingly, the Court finds that Petitioner's likely duration of future detention weighs heavily in favor of granting a bond hearing.

3. Conditions of Detention

The third *Banda* factor looks to the conditions under which the petitioner is detained. As explained in *Banda*, the more that these conditions "resemble penal confinement, the stronger [Petitioner's] argument that he is entitled to a bond hearing." 385 F. Supp. 3d at 1119.

Petitioner is detained at the NWIPC, where he claims the conditions "are no better than those at many penal institutions." Dkt. No. 13 at 4. Indeed, courts in this District have consistently found that NWIPC's conditions are "similar … to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6 (quoting *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *11 (W.D. Wash. Mar. 29, 2024), *R. & R. adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024)); *see also Katlong v. Barr*, No. C20-0846-RSL-MAT, 2020 WL 7048530, at *4 (W.D. Wash. Oct. 30, 2020), *R. & R. adopted*, 2020 WL 7043580 (W.D. Wash. Dec. 1, 2020); *Mohamed*, 2026 WL 497096, at *5; *Toktosunov*, 2025 WL 3492858, at *5; *Reyes v. Wolf*, No. C20-0377-JLR-MAT, 2020 WL 6820903, at *7 (W.D. Wash. Aug. 7, 2020), *R. & R. adopted as modified*, 2020 WL 6820822 (W.D. Wash. Nov. 20, 2020).

In *Katlong*, the court reviewed evidence concerning NWIPC's conditions and the findings of another case and found that, like many penal institutions, NWIPC segregates detainees by

ORDER ON HABEAS PETITION - 9

classification level and sex, restricts most movement to within each detainee's unit, and provides limited outdoor access to a small recreation area each day. 2020 WL 7048530, at *4. In *Toktosunov*, where the petitioner submitted a declaration describing similar conditions as well as concerns about access to religious worship, food, medical care, and cleanliness, Respondents "concede[d] that this factor likely favors petitioner." 2025 WL 3492858, at *5 (citation modified).

Here, Respondents offer no evidence to suggest a change in conditions at NWIPC. Nor have they sought an opportunity to respond to Petitioner's allegations that the conditions remain similar to those in many prisons and jails. Accordingly, the Court finds that the conditions under which the Petitioner is detained weigh in favor of a bond hearing.

4. <u>Delays in Removal Proceedings</u>

The fourth and fifth *Banda* factors consider whether there have been delays in the removal proceedings caused by Petitioner or Respondents, respectively. 385 F. Supp. 3d at 1118. In evaluating this factor, the Court should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.* (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)). At the same time, noncitizens are "entitled to raise legitimate defenses to removal … and such challenges to [their] removal cannot undermine [a] claim that detention has become unreasonable." *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R. & R. adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citation omitted). With respect to the Government, "[c]ontinued detention will … appear more unreasonable when the delay in the proceedings was caused by" ICE, "the immigration court[,] or other non-ICE government officials." *Joshi*, 2026 WL 456822, at *6 (quoting *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)).

ORDER ON HABEAS PETITION - 10

The record reflects neither dilatory tactics by Petitioner nor delay caused by Respondents. Petitioner moved to reopen his removal proceedings nearly three months after ICE detained him, but nothing in the record suggests this delay was for dilatory reasons—a delay of this duration is unsurprising given that Petitioner prepared his motion without the assistance of counsel while in federal custody. Dkt. No. 9 ¶¶ 14, 16. While there were some additional brief delays related to Petitioner not paying the filing fee, Petitioner promptly moved for a fee waiver and, when that was denied, paid the fee. *Id.* ¶¶ 16–18. In sum, the record does not reflect any delay in removal proceedings reasonably attributable to Petitioner.

Petitioner also does not point to any delays occasioned by the Government, and the record reveals none. The immigration court promptly notified Petitioner that he needed to pay the filing fee, ruled on his motion for a fee waiver, and ultimately denied his motion to reopen removal proceedings. *Id.* ¶¶ 16–18, 20.

Accordingly, the fourth and fifth *Banda* factors—delay by Petitioner and by the Government—are both neutral.

5. <u>Likelihood of a Final Order of Removal</u>

The final *Banda* factor requires considering "the likelihood that the final proceedings will culminate in a final order of removal." 385 F. Supp. 3d at 1120 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). If the petitioner has "not asserted any grounds for relief from removal," then removal is more likely "and continued detention will at least marginally serve the purpose" of "assuring the noncitizen is removed as ordered." *Id.* On the other hand, "the categorical nature of" mandatory detention under § 1225(b) may "become increasingly unreasonable" if the petitioner "has asserted a good faith challenge to removal[.]" *Id.* (citation omitted).

Here, the Court "lacks enough information … to opine on the potential merits of petitioner's claims and defenses" and, thus, declines to anticipate the outcome of Petitioner's

pending appeal. *Joshi*, 2026 WL 456822, at *7. In other cases where an IJ has ordered the petitioner removed over his claims for relief from removal, courts have found this factor to weigh against the need for a bond hearing. *See Mohamed*, 2026 WL 497096, at *5. Here, by contrast, Petitioner was ordered removed *in absentia* and so never presented any grounds for relief to the immigration court. Accordingly, the fact that the IJ ordered Petitioner removed without considering his claims does little to foreshadow the likely outcome of his appeal.

Therefore, the Court finds the likelihood of a final order of removal to be a neutral factor in this case.

6. <u>Weighing the Factors</u>

In sum, three of the six *Banda* factors favor granting a bond hearing and the rest are neutral. Given the weight of the factors favoring Petitioner—particularly the likelihood that his appeal and any efforts to remove him will drag on for a long time—the Court finds that his detention without a bond hearing has become unreasonable. *See Mohamed*, 2026 WL 497096, at *6 (finding petitioner entitled to a bond hearing where three factors favored petitioner, one favored Respondents, and two were neutral); *Nguyen*, 2026 WL 194232, at *5 (same where three factors favored petitioner and three were neutral); *Maliwat*, 2025 WL 2256711, at *8–9 (same where two factors favored petitioner and four were neutral).

C.  **Appropriate Relief**

As Petitioner contends and numerous courts have held, the appropriate relief for a claim of unreasonably prolonged detention under § 1225(b) is "an individualized bond hearing at which an [IJ] determines whether continued detention is necessary to protect the community or prevent the detainee's flight[.]" *Mohamed*, 2026 WL 497096 at *6 (internal quotation marks omitted). In other words, Petitioner must be given "the same hearing afforded to noncitizens lawfully detained under § 1226(a)." *Id.* At such a hearing, the Government is required to prove by clear and

ORDER ON HABEAS PETITION - 12

convincing evidence that the detainee poses a flight risk or a danger to the community at the time of the hearing. *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (holding "the constitutionally grounded hearing requirements set forth in *Singh* are also applicable [to bond hearings for those detained under § 1225(b)]")); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that clear-and-convincing-evidence standard in *Singh* was based on general principles of due process); *Banda*, 385 F. Supp. 3d at 1120. In addition, there must be a contemporaneous record, such as an audio recording, of the hearing. *Singh*, 638 F.3d at 1200.

Finally, to the extent the immigration court determines Petitioner is neither "a danger to the community" nor "so great a flight risk as to require detention without bond[,]" due process requires that it consider his financial circumstances and ability to afford bail, as well as alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017). "A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." *Id.* at 991; *see also Abduraimov v. Andrews*, No. C25-843, 2025 WL 2912307, at *10 (E.D. Cal. Oct. 14, 2025); *Cantor v. Freden*, 761 F. Supp. 3d 630, 640 (W.D.N.Y. 2025).

As to timing, the Court will follow the practice in this District and order Respondents to provide a bond hearing within 14 days of this order. *See, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (rejecting report and recommendation's proposed 35-day timeline and ordering bond hearing within 14 days)*; Maliwat*, 2025 WL 2256711, at *1 (ordering bond hearing within 14

ORDER ON HABEAS PETITION - 13

days); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (same); *Alvarado v. Clark*, No. C14-1322, 2014 WL 6901766, at *1 (W.D. Wash. Dec. 5, 2014) (same).

D.      **Petitioner's Requests for Injunctive Relief**

In addition to his claim of unlawfully prolonged detention, Petitioner seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event Respondents attempt to remove him to a third country.[2] Dkt. No. 5 at 25–28. Specifically, he requests an order enjoining his removal to any third country or, in the alternative, requiring notice and an opportunity to respond before any third country removal. Dkt. No. 5 at 29.

Because he invoked its habeas and federal question jurisdiction, the Court could provide equitable relief on those claims if Petitioner met the standard for a permanent injunction. *See* Dkt. No. 5 at 4; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Indeed, this Court and many others have ruled that Respondents' third-country removal policy does not comport with due process and have ordered similar relief. *See e.g.*, *Kumar v. Wamsley*, C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *Baltodano v. Bondi*, C25- 1958RSL, 2025 WL 3484769, at *2 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Bondi*, 2:25-CV-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025).

1. <u>Notice and an opportunity to be heard must accompany any third country removal.</u>

When the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country. 8 U.S.C. § 1231(b). But in doing so, it must comply both with the INA and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp.

---

[2] In his traverse, Petitioner does not press his request for an injunction requiring the Government to comply with 8 C.F.R. § 241.13—which applies to noncitizens subject to a final order of removal—or to provide any additional process in the event it re-detains Petitioner in the future. *See* Dkt. No. 5 at 23–25. Because the Court is not ordering Petitioner's immediate release and because Petitioner is not subject to a final order of removal, the Court finds such relief is unnecessary to address Petitioner's injury and will not reach these claims at this time.

ORDER ON HABEAS PETITION - 14

3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an IJ. *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*, 2025 WL 2987766, at *3–4; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025).

      Against this legal backdrop, Petitioner requests an order requiring notice of any third-country removal and the opportunity to respond and contest that removal in reopened removal proceedings if he has a fear of persecution or torture in the selected country. Dkt. No. 5 at 25–26, 29. In support, Petitioner cites a July 9, 2025 ICE policy memo, which allows for deportation of individuals to third countries "without any procedures for notice or an opportunity to be heard." *Id.* at 20. Respondents do not dispute that their policy permits, in some instances, removal to a third country without notice and an opportunity to be heard, but argue that Petitioner's challenge is not ripe because ICE has not indicated it will remove him to any country but Iran. *See* Dkt. No. 8 at 10–11. The problem with Respondents' argument is that, without a requirement that ICE notify Petitioner of its intent to remove him to a third country, Petitioner could be put on a plane without being told where he is going and would never have the chance to express a reasonable fear

ORDER ON HABEAS PETITION - 15

of persecution or torture or seek judicial intervention. Petitioner's fear of such a circumstance is not speculative, as such removals have been well documented by the courts and the press. *See e.g.*, *Nguyen*, 796 F. Supp. 3d at 733–74 (collecting cases); *Elshourbagy v. Bondi*, No. 2:25-CV-02432-TL, 2025 WL 3718993, at *9 (W.D. Wash. Dec. 23, 2025) (discussing Sarah Stillman, *Disappeared to a Foreign Prison*, The New Yorker (Dec. 12, 2025)).

As this Court and numerous others have consistently held, the procedures set forth in the July 9, 2025 ICE policy memo fall well short of what the *Aden* court and others in this district have found due process and the INA require. Thus, the Court will grant Petitioner's request for relief. Should Respondents take steps to remove Petitioner to a country other than Iran or any other country listed on Petitioner's final order of removal, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an IJ under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727. ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).

2. <u>Petitioner's request to enjoin third-country removal is denied without prejudice.</u>

Finally, Petitioner seeks to enjoin Respondents from removing him "to any third country" on the basis that ICE's third-country removal policy is punitive, in violation of his Fifth and Eighth Amendment rights. Dkt. No. 5 at 26–28, 29. As noted above, numerous courts, including this one, have held the Government's third-country removal policy is unconstitutional. *See, e.g.*, *Kumar*, 2025 WL 3204724, at *6; *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases). The

ORDER ON HABEAS PETITION - 16

Government does not address this growing body of legal authority, nor does it dispute the underlying factual allegations supporting it. Instead, Respondents again argue that Petitioner's request to enjoin third-country removal is speculative and premature, as ICE seeks only to remove Petitioner to Iran, and he "presents no evidence of any intention by ICE to remove Petitioner to a third country." Dkt. No. 8 at 10.

The Court agrees with Respondents that the present record does not support such a broad injunction. Rather, as detailed above, this order requires the Government to provide Petitioner with due process in effectuating any future third-country removal. As such, on this record, it is not clear to the Court that additional injunctive relief is necessary to prevent irreparable injury at this time. Nothing in this order prevents Petitioner from pursuing additional relief if warranted by future events. *See Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *4 (W.D. Wash. Jan. 28, 2026).

### III.  CONCLUSION

Accordingly, The Court further ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (Dkt. No. 5) is GRANTED in part;

(2) Respondents shall hold a bond hearing for Petitioner within fourteen calendar days of this order;

(3) Within **FORTY-EIGHT (48)** hours of Petitioner's bond hearing, Respondents must provide the Court with a declaration confirming that Petitioner has received such a hearing and stating whether Petitioner was granted bond and, if so, the conditions of his release;

(4) If Respondents take steps to remove Petitioner to any country other than the country listed on his final order of removal, they must provide Petitioner with written notice of

their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

(5) Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 8 U.S.C. § 2412.

Dated this 6th day of March, 2026.

*[signature]*

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 18